IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, et al.<br><br>    Plaintiffs,<br><br>  v.<br><br>JOHNSON & JOHNSON et al.<br><br>    Defendants. | No. C 02-00790 SI<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

On February 23, 2007, the Court heard argument on defendants' motion for partial summary judgment on priority. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES defendants' motion.

**BACKGROUND**

In 2002, plaintiffs Boston Scientific Corp., Boston Scientific Scimed, Inc., Scimed Life Systems, Inc. and Schneider (Europe) GmbH (collectively "BSC") brought suit against defendants Johnson & Johnson and Cordis Corporation (collectively "Cordis") for infringement of six patents. The first four patents were invented at Schneider (Europe) by Gerhard Kastenhofer and are directed to a bilayered catheter tube design for balloon angioplasty catheters (collectively, the "Kastenhofer patents").[1] The remaining two patents were invented at Schneider (USA) by Michael Forman and are directed to laser

---

[1] The Kastenhofer patents bear U.S. Patent Nos. 5,843,032 ("the '032 patent"), 5,961,765 ("the '765 patent"), 6,027,477 ("the '477 patent"), and 6,471,673 ("the '673 patent").

bonding of balloons to angioplasty catheter tubes (collectively, the "Forman patents").[2] Defendants counterclaimed that plaintiffs are infringing three Cordis-owned U.S. patents invented by Carlos Fontirroche and Jason Querns (collectively, the "Fontirroche patents"), and that the Fontirroche patents and Kastenhofer patents interfered with each other.[3] As with the Kastenhofer patents, the Fontirroche patents are directed to a bilayered catheter tube design for balloon angioplasty catheters.

The Court issued a Claim Construction Order on May 10, 2004. In August 2004, BSC moved for a judgment of non-interference between the Kastenhofer patents and the Fontirroche patents. Cordis responded with its own motion for a declaration of an interference. On February 22, 2005, the Court issued an order finding an interference between the Fontirroche '594 patent and three of the Kastenhofer patents.[4] Specifically at issue was the term "bonded" in claim 7 of the '594 patent. BSC argued that the term should be limited to chemical bonding, while Cordis argued that the term encompassed other types of bonding, such as physical bonding. The Court agreed with Cordis, concluding that the term "bonded" in claim 7 of the '594 patent encompassed more than just chemical bonding, and therefore found that an interference existed.

The Court held a bench trial between December 5 and December 8, 2005 to decide which patent had the earliest priority date in relation to the interference-in-fact. In light of testimony presented at the trial, BSC requested leave to file a motion for reconsideration of the Court's construction of the term "bonding" and "bonded" in the '594 patent. The Court granted leave, and subsequently granted BSC's motion for reconsideration. The Court concluded that the term "bonded" in claim 7 of the '594 patent encompassed only chemical bonding. As a result, the Court reversed its prior finding, and held that there was no interference-in-fact between the '594 patent and the Kastenhofer product patents.

In the instant motion, Cordis seeks partial summary judgment on its claim that that the invention

---

[2] The Forman patents bear U.S. Patent Nos. 5,267,959 ("the '959 patent") and 5,501,759 ("the '759 patent").

[3] The Fontirroche patents bear U.S. Patent Nos. 5,538,510 ("the '510 patent"), 5,820,594 ("the '594 patent"), and 5,824,173 ("the '173 patent").

[4] The Court found an interference between claim 7 of the '594 patent and claim 9 of the '032 patent, claim 10 of the '477 patent, and claim 7 of the '673 patent.

2

embodied in Fontirroche '594 patent is prior art to the asserted claims of the Kastenhofer patents.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 317 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Patents are presumed to be valid. 35 U.S.C. § 282. Patent invalidity must be proven by clear and convincing evidence. *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986), *cert. denied*, 480 U.S. 947 (1987). A patent can be invalidated through the doctrines of anticipation or obviousness. In order for an invention to anticipate or render obvious a patent, the invention must have temporal priority over said patent. *See* 35 U.S.C. §§ 102, 103.

## DISCUSSION

Cordis seeks partial summary judgment to establish that the invention embodied in its '594 patent ("the '594 invention") is prior art to the asserted claims of the Kastenhofer patents[5] under 35 U.S.C. § 102(g).[6] The issue of priority bears on the overarching issue of patent validity.[7] Mot. at 1.

An inventor can establish that she was first to invent under section 102(g) if she demonstrates that "she was the first to reduce the invention to practice." *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001). If the inventor is second to reduce to practice, she can still establish priority if she can show "that she was the first to conceive of the invention and then, prior to the other party's conception, exercised reasonable diligence in reducing the invention to practice." *Id.* Cordis concedes that the inventors of the claims in the Kastenhofer patents, Christine Samuelson Byam ("Byam") and Gerhard Kastenhofer ("Kastenhofer"), conceived of their inventions prior to the conception of the '594 invention. Mot. at 2. Cordis contends, however, that the reduction to practice (either actual or constructive[8]) of the '594 invention was prior to that of either Byam or Kastenhofer's inventions. *Id.* at 2-3. Furthermore, Cordis claims that neither Byam nor Kastenhofer was sufficiently diligent from a time just prior to the '594 date of conception to the time of the BSC inventors' reduction to practice. *Id.*

## I. Reduction to practice of the '594 invention

Cordis's first step in proving priority is to establish a reduction to practice date for the '594 invention. Cordis contends that it reduced the '594 invention to practice on September 14, 1993. Reply

---

[5] At issue are claims 3, 9, 11, 12, and 14 of the '032 patent; claims 4 and 10 of the '477 patent; claims 1-8 of the '765 patent; and claims 1-7 of the '673 patent.

[6] 35 U.S.C. 102(g) provides that:

A person shall be entitled to a patent unless . . . before such person's invention thereof, the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

[7] For instance, priority becomes important if Cordis argues that the Kastenhofer claims were anticipated or rendered obvious by the '594 invention.

[8] A constructive reduction to practice occurs when a patent application is filed.

4

1   at 12-13. BSC responds that Cordis has not made the requisite showing to establish this date for an
2   actual reduction to practice, and therefore Cordis's applicable reduction to practice date should be the
3   filing date, January 31, 1994. Opp. at 5-7.

4   Actual reduction to practice occurs when the inventor constructs a product or performs a process
5   that meets all the elements of the patent claim. *Eaton v. Evans*, 204 F.3d 1094, 1097-98 (Fed. Cir.
6   2000). The inventor must also demonstrate the capacity of the invention to achieve its intended purpose.
7   *Scott v. Finney*, 34 F.3d 1058, 1062 (Fed. Cir. 1994).

8   Cordis first points to BSC's concession at the interference trial that Cordis had actually reduced
9   to practice on September 14, 1993 as evidence of that fact. Reply at 12. BSC correctly responds that
10  contrary to the present situation, the interference proceedings were premised on a claim construction
11  that did not require a chemical bond between the inner and outer layers of the inner tube. Opp. at 6.
12  Since the interference proceedings, the applicable claim construction of the '594 patent has changed to
13  include the requirement of a chemical bond. The Court therefore finds BSC's interference trial
14  concession to be insufficient to establish the actual reduction to practice date of the '594 invention.

15  Cordis next argues that on September 14, 1993 it conducted "extensive tests" on a catheter that
16  embodied the '594 invention. Reply at 12. Cordis claims that these tests yielded "successful results"
17  sufficient to establish that the Fontirroche invention would work for its intended purpose. *Id*. Cordis
18  further maintains that the catheter used in the tests contained a chemical bond between the inner and
19  outer layers of the inner tube. *Id*. at 12-13.

20  The Court finds Cordis has presented clear and convincing, undisputed evidence that the '594
21  invention was actually reduced to practice on September 14, 1993. Cordis has submitted documentation
22  of the successful test results of a catheter embodying the '594 invention, in addition to deposition
23  testimony demonstrating that the tested catheter contained a chemical bond. *See* Span. Decl., Exs. S,
24  T. This showing is sufficient to shift the burden to BSC to show a genuine factual dispute. *See Sweats*
25  *Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). BSC has failed to put
26  forward evidence sufficient to create such a dispute, instead making conclusory statements about the

1 sufficiency of Cordis's showing.[9] Opp. at 6. As such, the Court finds that Cordis's reduction to practice date for the '594 invention is September 14, 1993.

## II. Reduction to practice of the Kastenhofer patents

Having established its own reduction to practice date, to claim priority Cordis must next show that this date is earlier than the reduction to practice date of the Kastenhofer patents. Cordis argues that no reasonable juror could find that the claims invented by Byam and Kastenhofer were actually reduced to practice before the '594 claims. Mot. at 6. Cordis maintains that the applicable reduction to practice date for the Kastenhofer patents should be the patents' filing date, September 20, 1994. *Id*.

### A. Byam claims

To prove that its reduction to practice date is before BSC's, Cordis seeks to show that Byam, the inventor of a number of claims in the Kastenhofer patents, failed to actually reduce her invention to practice. According to Cordis, Byam failed to actually reduce to practice because of insufficient experimentation and appreciation of her invention. Mot. at 7-13.

#### 1. Experimentation

As discussed, in order to establish actual reduction to practice, the inventor must have 1) "constructed an embodiment . . . that met all limitations of the claim,"[10] and 2) "determined that the invention would work for its intended purpose." *Slip Track Sys. Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1265 (Fed. Cir. 2002). Complex inventions may require testing to show that they work for their intended purpose. *See Scott*, 34 F.3d at 1062. The success of testing is measured in terms of what purpose the inventor intended. *Knapp v. Anderson*, 477 F.2d 588, 590 (C.C.P.A. 1973). Courts are

---

[9] BSC argues that since Cordis's evidence fails to demonstrate the "formation, existence, testing, evaluation, or performance" of the chemical bond between the inner and outer layers of the inner catheter tube, it is insufficient. Opp. at 6-7. Such conclusory statements regarding the moving party's evidence are not sufficient to defeat a motion for summary judgment. *See Thornhill Publ'g Co., Inc.*, 594 F.2d at 738.

[10] Cordis does not deny that BSC satisfied this requirement in January 1992. Opp. at 8.

6

guided by a "common sense approach" to judging the sufficiency of the testing. *Id*. at 1061. Reduction to practice does not require that the invention, when tested, be in a commercially viable stage of development. *Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.*, 731 F.2d 831, 838 (Fed. Cir. 1984). Testing need not show utility beyond a possibility of failure, but simply beyond a probability of failure. *Scott*, 34 F.3d at 1652.

Cordis alleges that Byam's experiments failed to show that her invention worked for its intended purpose. Mot. at 7. This purpose, says Cordis, is to be suitable for "use in a coronary angioplasty procedure." Mot. at 8:5-6. Cordis points to three sets of tests that it claims show that Byam's invention was not suitable for such a use. The tests, performed by BSC's "Capture Team" member William Clemens, resulted in the catheters "delaminating" over 60% of the time. *Id*. at 9-11. According to Cordis, a catheter is not suitable for use in a coronary angioplasty procedure if it delaminates during use.[11] *Id*.

BSC counters that the intended purpose of the Kasthofer patents is not use in a coronary angioplasty procedure, but rather "providing a catheter with a low-friction inner tube that was capable of being bonded to a catheter balloon." Opp. at 9. BSC argues that it performed several tests that showed the catheters to be both flexible and low in friction. *Id*. BSC also points out the presence of many tests that did *not* result in delamination as evidence that the Byan invention worked for its intended purpose. *Id*. at 9, 13-15.

As a preliminary matter, the Court does not accept Cordis's interpretation of the intended purpose of the Byam invention. According to the text of the Kastenhofer patents, the intended purpose of the invention "is to present an interventional low profile balloon catheter that can be moved into tortuous vessels with a guidewire inside the catheter without the risk of the guidewire being captured or clogging in the catheter." Spanbauer Decl., Exs. F, G, H. The Court is bound by the inventor's purpose as enunciated in the patent. *See Knapp*, 477 F.2d at 590. Consequently, even if Cordis could show that delamination occurred in a plurality of experiments, it would still need to prove that delamination frustrated the invention's purpose as articulated in the patent. Cordis has failed to do so.

---

[11]Consequences of delamination include acute heart attacks and other "serious risk[s] for the patient." Mot. at 8.

7

Further, material questions of fact remain as to the extent of delamination in the experiments. Cordis focuses on the three sets of experiments conducted by William Clements. Mot. at 9-11. Out of 13 total experiments, 8 catheters delaminated. *Id*. Had these been the only tests, they might not have met the "beyond a probability of failure" standard enunciated in *Scott*. *See* 34 F.3d at 1062. However, BSC points to other tests that saw relatively little delamination. Opp. at 13-15 (in flexibility testing, 34 out of 40 samples demonstrated no sign of delamination; in three of four crush tests under extreme conditions,[12] no delamination occurred). Cordis cites no authority for its claim that as a matter of law, the "unpredictable nature of the delamination" should result in a finding of no reduction to practice. *See* Reply at 6.

It is clear that the Byam invention was not ready for use in a commercial setting in 1992. Byam herself stated that "a balloon catheter with a delaminated inner member would not be something you would want to put into a patient." Spanbauer Decl., Ex. N. However, reduction to practice does not require that the invention be ready for commercial sale. *See Scott*, 34 F.3d at 1062.

The Court finds Cordis has not presented clear and convincing, undisputed evidence that Byam's experiments were insufficient. Therefore, summary judgment for Cordis on this issue is improper.

### 2. Appreciation

Cordis also argues that it is undisputed that in January 1992, Byam did not believe that her invention would work for its intended purpose, thus precluding actual reduction to practice. This argument also fails**.**

Actual reduction to practice of an invention cannot occur unless the inventor appreciated the operability of the embodiment. *Mycogen Plant Science, Inc. v. Monsanto Co.*, 61 F. Supp. 2d 199, 238 (D. Del. 1999). As evidence of non-appreciation, Cordis points to Byam's admission that "a balloon catheter with a delaminated inner member would not be something you would want to put into a

---

[12]These particular test conditions involved higher-than-normal pressures and the application of forces to the catheter's inner layer. Opp. at 13.

8

patient." Spanbauer Decl., Ex. N. According to Cordis, this statement is probative as to whether Byam believed her catheter would work for its intended purpose. Mot. at 12.

This argument is tied to the notion that the intended purpose of the Byam invention is to be suitable for use in a coronary angioplasty procedure. Mot. at 8. As discussed above, this premise is incorrect. *See supra* at 9. While it seems that Byam did not think her invention was ready to be commercially sold, there is ample evidence to suggest that she thought her invention worked for its intended purpose. *See* Massa Decl., Ex. M. For example, Byam's testimony at the interference trial reads in part:

> Q. When you received the results from Mr. Clemens, did you in your own mind come to any conclusions as to whether you had proof of your concept? A. Yes, I believe – I believe we had proven it. Q. In spite of the delamination? A. Yes. Some still worked.

*Id.*

As further evidence of lack of appreciation, Cordis argues that while William Clemens's testified that he told Byam about the results of his experiments, he failed to testify as to her reaction. *Id.* at 13. This argument also fails. The law of appreciation does not require that an inventor's reaction be noted when she is told of her invention's test results.

For the foregoing reasons, Cordis's appreciation argument fails. Therefore, the Court finds Cordis has not presented clear and convincing, undisputed evidence that the '594 invention is entitled to an earlier reduction to practice date than the Byam claims in the Kastenhofer patents.

### B.    Kastenhofer claims

Cordis also contends that Kastenhofer never actually reduced his invention to practice. According to Cordis, Kastefhofer's actual reduction to practice failed because the inventor insufficiently shipped and tested his invention in the United States. *Id.* at 16.[13]

---

[13] In addition to refuting Cordis's argument on actual reduction to practice, BSC argues that it should be entitled to a priority date with respect to the Kastenhofer claims as of the October 27, 1993 filing of Kastenhofer's European patent application.

According to 35 U.S.C. § 119(a), an inventor can be granted priority in the U.S. as of the filing date of her foreign patent application. *See* 35 U.S.C. § 119(a). In order for section 119 priority to apply, the foreign patent application must be sought by the inventor, her legal representatives, or her assigns. *Id.*

This Court has already decided this issue. In its Senior Party Order, the Court held that because

9

Cordis concedes that Kastenhofer reduced his invention to practice in Europe at some time prior to Cordis's filing of the '594 patent application. Opp. at 16. Cordis contends, however, that a completed catheter embodying the Kastenhofer invention was not imported into and tested in the United States before Cordis's reduction to practice date, as required by law. Mot. at 15-17.

For inventions whose U.S. patent applications were filed before January 1, 1996, "only activity within the United States can serve to establish priority." *Scott v. Koyama*, 281 F.3d 1243, 1246 n.2 (Fed. Cir. 2002). Reduction to practice in the United States requires that "the invention be embodied in tangible form in the United States, not simply reported." *Id.* at 1247.

The Court finds that issues of material fact exist as to the date the Kastenhofer invention first appeared in the U.S. To meet its burden, Cordis offers the testimony of BSC's technical expert Curtis Frank, who stated that as far as he knew, no completed invention was shipped to the U.S. in 1993 or 1994. Spanbauer Decl., Ex. M. In rebuttal, BSC argues that Dr. Frank's testimony simply reveals a lack of knowledge on an issue about which he had no reason to know. Opp. at 18. BSC further maintains that "Asuka" catheters, which embodied the invention described in the Kastenhofer patents, were imported into the U.S. sometime before September 27, 1993.[14] *Id.* at 17. As evidence, BSC has produced a letter dated September 27, 1993 from the NamSA testing laboratory in Northwood, OH, requesting that BSC ship "15 *additional* samples of your Asuka OTW PTCA Balloon Dilatation Catheter" to the United States. Massa Decl., Ex. K (emphasis added). While Cordis is correct that BSC has failed to offer proof of when or if samples were actually shipped prior to September 27, 1993, the evidence presented is sufficient to establish a triable issue of fact.

---

"Kastenhofer did not assign his interest in the application to Schneider (Europe)" before the European filing was made, Kastenhofer is not entitled to the benefit of the filing date for his European patent application. November 22, 2005 Order at 2:23-25. The Court relied on *Cragg v. Martin*, 2001 WL 1339890, *4-5 (B.P.A.I. 2001), which has since been confirmed by the U.S. District Court for the District of Columbia. *See Scimed Life Systems, Inc. v. Medtronic Vascular, Inc.*, 2006 U.S. Dist. LEXIS 15476, *18-19 (D. D.C. 2006) ("[i]n order for the foreign patent application to be filed on behalf of the United States applicant, the person filing the foreign application must be an assignee or legal representative *at the time* that the foreign application was filed" (emphasis in original)).

Because none of the facts that BSC presents to the Court address the dispositive issue of timely assignment, the Court finds that as a matter of law, BSC is not entitled to the priority date of Kastenhofer's European patent application.

[14]September 27, 1993 was 13 days *after* Cordis's alleged actual reduction to practice.

Cordis also argues that the Court should require BSC to have *tested* the Kastenhofer invention in the United States in order to find an actual reduction to practice. Reply at 9. Cordis cites no authority that stands for this proposition. Both of the cases cited by Cordis, *Scott,* 281 F.3d at 1247, and *Shurie v. Richmond*, 699 F.2d 1156, 1158 (Fed. Cir. 1983), involved process patents and are therefore irrelevant to the instant matter. By definition, processes must be performed in the United States to be actually reduced to practice. *See Corona Cord Tire Co. v. Dovan Chemical Corp.*, 276 U.S. 368, 383 (1928) ("a process is reduced to practice when it is successfully performed"). Both cases turned not on whether the processes were tested in the United States, but rather whether the processes were performed in the United States. *See Scott*, 281 F.3d at 1247; *Shurie*, 699 F.2d at 1158. Cordis claims that "even though testing of the *Scott* invention had already been successfully completed in the U.K., the Federal Circuit said that the inventor had to 'repeat it' in the United States in order for there to be a reduction to practice under U.S. law." Reply at 10:9-11 (citing 281 F.3d at 1247). Cordis misconstrues the Federal Circuit's opinion. The "it" to which the Federal Circuit referred was the *process*, not the *testing*. 281 F.3d at 1247.

The law does not require the Kastenhofer invention to have been tested in the United States in order to for it to have been sufficiently reduced to practice. Cordis has failed to present clear and convincing, undisputed evidence that the Kastenhofer invention was not present in the United States before Cordis's actual reduction to practice. Therefore, summary judgment for Cordis on this issue is improper.

### III. Diligence

Since the Court has already denied summary judgment on the reduction to practice issue, the diligence issue is moot. However, in order to narrow the issues for trial, the Court will respond to Cordis's argument with respect to diligence.

The second to reduce to practice can still be granted priority if she can prove that "she was the first to conceive of the invention and then, prior to the other party's conception, exercised reasonable diligence in reducing the invention to practice." *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189 (Fed. Cir. 2002). The Federal Circuit defines "reasonable diligence" as

11

continuous activity toward reduction to practice so that the invention's conception and reduction to practice are substantially one continuous act. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). The party chargeable with diligence must account for the entire period during which diligence is required, although "there need not necessarily be evidence of activity on every single day if a satisfactory explanation is evidenced." *Monsanto Cp. v. Mycogen Plant Sci. Inc.*, 26 F.3d 1356, 1369 (Fed. Cir. 2001); *Gould v. Schawlow*, 363 F.2d 908, 921 (C.C.P.A. 1966).

### A. Kastenhofer claims

In assessing diligence, only activity within the United States can be considered. *See Scott*, 281 F.3d at 1245-1246 (junior party must show "diligence in the United States" to the filing date).

While Kastenhofer might have worked diligently in Europe, Cordis has presented two periods of inactivity that preclude a finding of reasonable diligence in the United States. The first period of inactivity occurred during the 3-1/2 month period between mid-May 1993 and August 1993. Reply at 11. The second period of inactivity occurred for the 11 months between October 1993 and September 1994. *Id.* The evidence of this activity is undisputed by BSC.

Cordis has sufficiently presented clear and convincing, undisputed evidence that Kastenhofer did not act with diligence in the United States "during the entire critical period." 261 F.3d at 1369. Therefore, summary judgment on this issue is proper.

### B. Byam claims

Cordis has conceded that with all reasonable inferences drawn against it, Byam conceived of her claims before the Cordis inventors conceived of the '594 invention on November 19, 1992.[15] Mot. at 13. Given that premise, if BSC had a later reduction to practice date than Cordis, then BSC would have to show that Byam acted with reasonable diligence between November 18, 1992 and the Kastenhofer filing date of September 20, 1994 in order to establish priority. BSC argues that because Byam's claims

---

[15] While Cordis may later argue for an earlier date of conception for the '594 invention, Cordis recognizes that all reasonable inferences must be drawn against it in a summary judgment motion. Mot. at 13-14.

12

were transferred to Kastenhofer, diligence can be shown through him.

The Court has already found that Kastenhofer's activities were insufficient to establish diligence. *See supra*, at 12. Therefore, BSC cannot prove Byam's diligence through Kastenhofer's actions. As for Byam's actions, Byam admitted at the interference trial that she made no entries in her lab book that related to her invention from November 1992 to September 1994. Spanbauer Decl., Ex. N. As a matter of law, such a prolonged period of inactivity does not constitute reasonable diligence. *See Fleming v. Bosch and Pollman*, 181 U.S.P.Q. 761, 764 (B.P.A.I. 1973). The Court therefore finds that neither Byam nor Kastenhofer "exercised reasonable diligence in reducing the invention[s] to practice." *Union Carbide*, 308 F.3d at 1189.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Cordis's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: March 14, 2007

SUSAN ILLSTON
United States District Judge

13