IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, et al., | No. C 02-00790 SI |
| Plaintiffs, | **FINAL PRETRIAL PREPARATION ORDER** |
| v. | |
| JOHNSON & JOHNSON, et al., | |
| Defendants. _____/ | |
| AND RELATED COUNTERCLAIMS. _____/ | |

On September 18, 2007, the Court held a final pretrial conference in the above captioned matter, which is set for jury trial beginning October 9, 2007. All parties were represented by counsel. The following matters were resolved:

1. **Number of jurors and challenges**: There shall be a jury of nine members. Each side shall have up to four peremptory challenges.

2. **Voir dire**:

A. **Questionnaires:** At the parties' request, a questionnaire prepared by the parties will be provided to the jury panel. To facilitate this, the parties are ordered to provide 50 copies of the blank questionnaire to David Weir, Jury Supervisor, no later than noon on Friday, October 5, 2007. Prospective jurors will be provided with the questionnaires upon their arrival on Tuesday, October 9, 2007. The completed forms should be available at about 10:00 a.m. that morning, at which time counsel

should contact Mr. Weir to obtain the completed questionnaires, to arrange for their copying, and to review them. (Counsel will be responsible for making arrangements to have the questionnaires copied.)

        B. **FJC patent video:** The parties requested that the jury panel be shown the patent video presentation prepared by the Federal Judicial Center. It was agreed that the patent video will be shown to the entire venire in the office of the Jury Supervisor, after they have completed the questionnaires but before they come to the courtroom for general voir dire. Counsel shall provide a copy of the video or DVD to Mr. Weir if he does not have one already.

        C. **Voir dire:**  General voir dire will begin in the courtroom at 12:00 noon on Tuesday, October 9, 2007. The court will conduct general voir dire, and counsel for each side shall have up to 30 minutes total to question the panel.

    3. **Jury instructions**: Counsel have submitted certain joint proposed jury instructions, and separate sets of contested instructions. No later than **Tuesday, October 2, 2007**, counsel shall submit one complete set of proposed instructions, containing both agreed upon instructions (which shall be so noted), and contested instructions, all in the order in which they should be read to the jury. Where contested instructions are included, they should be annotated both with the proponent's authority for seeking the instruction and the opponent's reason for opposition. Where feasible, competing instructions addressing the same point shall be included together in the single set of proposed instructions. The final submission shall be filed in hard copy and also submitted to the court on disk, suitable for reading by WordPerfect 10 (Windows) on or before October 2, 2007.

    4. **Trial exhibits**: No later than Friday, October 5, 2007, the parties shall submit their trial exhibits, in binders with numbered tabs separating and identifying each exhibit. The court shall be provided with three sets (for the court, the file and the witness) and each side shall provide one set for the other side. To the extent that original documents are to be used as exhibits in the case, they should be included in the set of exhibits for the file.

///

5. **Timing of trial**: Plaintiff originally estimated that the trial should take 9 days, including jury selection, opening statements, evidence, closing arguments and instructions; defendant originally estimated 12 days for the same events. At the pretrial conference plaintiff represented that it has agreed to some stipulated damage information which should shorten the time requirements by a day or two. The Court has reviewed and considered the files, the parties' pretrial witness statements, the recent evidence stipulations and the Court's rulings on various motions in limine, and finds that 10 days is a reasonable estimate for adequate presentation of this trial. Based on this estimate, each side shall have 1 hour for opening statements; each side shall have 20 hours total for presentation of evidence, which includes direct and cross-examination and presentation of all exhibits; and each side shall have up to 1.5 hours for closing argument. In the event either side uses up its trial time before the end of the case, the Court may, in its discretion, allow further time, generally in five-minute increments, to assure fair presentation of the issues. However, since both the jury's availability and the Court's scheduling of other cases will be based on the current trial estimates, the Court will make every effort to adhere closely to the time allotments.

6. **Trial schedule**: Jury trials are generally conducted Monday through Thursday; jury trials are generally not conducted on Fridays, although deliberating juries are free to deliberate on Fridays. The trial day runs from 8:30 a.m. until 3:00 p.m., with a 15 minute break at 10:00 a.m., a 30 minute break at 12:00 noon and a 15 minute break at 2:00 p.m., all times approximate. The Court will be unavailable on October 24-25, 2007. Therefore the trial schedule will be as follows:

October 9, 10, and 11, 2007;

October 15, 16, 17, and 18, 2007;

October 22 and 23, 2007; and

October 29, 2007

The Court anticipates that jury selection and opening statements will take place on Tuesday, October 9, 2007; and instructions and closing arguments will take place on Monday, October 29, 2007.

7. **Motions in limine**: The parties filed 20 pretrial motions, as follows (in the order

3

presented at page 45 of the Joint Pretrial Conference Statement)::

**1.  Cordis's Motion to Have Certain Summary Judgment Rulings Deemed Established for Purposes of Trial**: Cordis seeks to have four of the Court's conclusions found in the March 14, 2007 Order Denying Defendants' Motion for Partial Summary Judgment (docket #496) deemed established for purposes of trial. The four conclusions, and the Court's rulings on them, are as follows:

–That the inventions claimed in U.S. Patent 5,820,594 to Fontirroche et al. were actually reduced to practice by the Cordis inventors no later than September 14, 1993. **GRANTED**. *See* March 14, 2007 Order at 6:1-2 ("[T]he Court finds that Cordis's reduction to practice date for the '594 invention is September 14, 1993.").

–That the intended purpose of the Kastenhofer[1] patents is to present an interventional low profile balloon catheter that can be moved into tortuous vessels with a guidewire inside the catheter without the risk of the guidewire being captured or clogging the catheter. **GRANTED** – unopposed by Boston Scientific. *See also* Order at 7:21-23.

–That the Kastenhofer patents are not entitled to an invention priority date based on the October 27, 1993 filing date for Kastenhofer's European patent application. **GRANTED**; see discussion below re Boston Scientific's Motion in Limine to Instruct the Jury that the Effective Date of Boston Scientific's Patents is October 27, 1993 (docket #669), and Cordis Motion in Limine No. 3 (docket #678).

–That with respect to the asserted claims of the Kastenhofer patents, neither Byam nor Kastenhofer exercised reasonable diligence in the United States in reducing the claimed inventions to practice. **GRANTED**. *See* Order at 11:23-24 ("[I]n order to narrow the issues for trial, the Court will respond to Cordis's argument with respect to diligence."); 13:7-9 ("The Court therefore finds that neither Byam nor Kastenhofer 'exercised reasonable diligence in reducing the invention[s] to

---

[1] Plaintiff now seeks to call the Kastenhofer patents the Byam patents. The Court declines to change the way the patents are referred to after these many years of litigation, and will continue to refer to plaintiff's patents as the Kastenhofer patents.

4

practice.'").

**2. Cordis's Motion to Exclude Evidence of the Medtronic Arbitration Ruling: DENIED.** Cordis moves to exclude evidence of a "private arbitration ruling in an unrelated patent dispute between Medtronic and [Boston Scientific] in which [Boston Scientific] was awarded . . . damages." The decision was used by Boston Scientific's damages expert in forming his opinion concerning reasonable royalty damages. Cordis first argues that the Medtronic arbitration ruling should be excluded because Boston Scientific failed to produce it during fact discovery. However, the Court agrees with Boston Scientific that the Medtronic arbitration ruling was not responsive to the original document requests and only became relevant when Boston Scientific's expert relied on it in opining on damages. Boston Scientific then produced the ruling to Cordis, whose expert had ample time to rebut Meyer's reliance on the Medtronic ruling. Cordis also argues that the Medtronic arbitration ruling is irrelevant, but Boston Scientific's expert has found it to be highly relevant to his analysis of damages. Cordis is free to dispute, through its experts and cross-examination, whether the ruling is a valid data point in analyzing damages. Cordis finally moves to exclude under FRE 403, claiming that Boston Scientific's use of the $168 million Medtronic arbitration ruling is designed only to impress upon the jury the large amount of money at stake in this case. Boston Scientific represents in response that it "has no intention of informing the jury of the size of the award," Oppo. at 8:6, which should address Cordis' FRE 403 concern with repeated mention of the large dollar figure.

**3. Cordis' Motions in Limine (1-9):**

(1) **Motion to exclude evidence of the Conor CoStar catheter**: **DENIED**. Cordis seeks to exclude evidence concerning Boston Scientific's testing of Cordis's product, the Conor CoStar catheter, on the grounds that it is irrelevant (FRE 402) and confusing/unduly prejudicial (FRE 403). Boston Scientific asserts that its testing of the Conor CoStar catheters, which caused delamination under various conditions, is relevant to arguments concerning reduction to practice, and the Court agrees. Cordis may cross-examine to explore similarity of testing protocol, etc.

(2) **Motion to restrict testimony and arguments on reduction to practice:** Cordis

5

seeks to preclude specific statements by Boston Scientific's experts concerning reduction to practice, contending they are incomplete in light of this Court's articulation of the purpose of the Kastenhofer inventions in its March 14, 2007 Order Denying Defendants' Motion for Partial Summary Judgment. Cordis's motion as framed is **DENIED**, because the challenged statements are not necessarily inconsistent with the earlier order.  At trial, either party may challenge (object to or cross-examine concerning) the other's evidence should it be inconsistent with prior court orders or the intrinsic record relating to the patents at issue.

(3) **Motion to preclude Boston Scientific from asserting an October 1993 filing date: GRANTED**; see discussion of Boston Scientific's motion in limine to instruct the jury that the effective date of Boston Scientific's patents is October 27, 1993 (docket #669).

(4) **Motion to exclude references to the interference trial: GRANTED IN PART**. Cordis seeks to exclude confusing references to the interference trial; to this extent the motion is granted.  The parties may not refer to "the interference trial," nor may they undertake to explain to the jury what an interference is, why there was an interference trial in this case, or what its significance was (or was not).  Any such efforts would confuse more than clarify and waste the jury's time and attention. FRE 403.  However, the parties may use otherwise admissible testimony from the trial, and shall explain its provenance (if necessary) as coming from a "prior proceeding" between the parties.

(5) **Motion to exclude evidence of prior Boston Scientific settlements: DENIED**. Cordis seeks to exclude under FRE 403 evidence of licenses arising out of prior litigation settlements involving the Kastenhofer patents, arguing that the minimal probative value of the evidence would be substantially outweighed by the danger of juror confusion.  Boston Scientific contends that such evidence is relevant as a secondary consideration of non-obviousness.  The Court agrees with Boston Scientific that licenses, even those taken in settlement of litigation, may be probative evidence of commercial success.  *See Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004) (licenses, some of which were taken in settlement of litigation, "'may constitute evidence of nonobviousness,'" but will carry little probative weight unless the patentee demonstrates "'a nexus between the merits of the invention and the licenses of record'") (quoting *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995)).  The probative value will not be substantially outweighed by the

6

possibility of juror confusion because Cordis is free to cross-examine about the context in which the licenses were created.

(6) **Motion to exclude argument that prior art was "not well-known": GRANTED**. Cordis seeks to prevent Boston Scientific from arguing that prior art was "not well-known to artisans practicing in the relevant field, or that no artisan was likely aware of all the prior art." Boston Scientific appears to respond that it does not plan to do so, and therefore asks that Cordis' motion be denied as moot. Instead, the Court will grant it as unopposed.

(7) **Motion to exclude reference to substantive changes in Kastenhofer deposition transcripts: DENIED**. Cordis seeks to exclude changes made by Gerhard Kastenhofer to his various deposition transcripts, on the basis that they are unauthorized substantive changes. Kastenhofer, whose native language is German, testified that the extensive changes were made because he "misunderstood" or "didn't understand . . . correctly" the questions put to him in English. That assertion may be tested on cross-examination, but the Court will not exclude the changes.

(8) **Motion to exclude mention of the Forman patents: DENIED**. Cordis seeks to exclude all mention of, or any documents that "concern, relate to or deal with," the Forman patents which were formerly but are no longer part of this action. The request, however, is overbroad since some of the exhibits in the case overlap. Boston Scientific represents that it "does not intend to 'mention' or otherwise put in issue the Forman '759 and '959 patents, provided that Cordis does not put the Forman patents, and the laser bonding technology described and claimed in them, in issue during trial." The Court will hold the parties to this standard.

(9) **Motion to exclude Richard Goodin's "day log" and his priority testimony: DENIED**. This issue was decided against Cordis at the interference trial and the Court sees no reason to change its prior ruling.

**4. Boston Scientific's motion to exclude opinions of Raymond Sims: DENIED**. Boston Scientific seeks to preclude Cordis from referring to opinions expressed by Raymond Sims in a damage report in an unrelated Boston Scientific case. Mr. Sims' report was considered by Boston Scientific's current damages expert, Paul Meyer, although Mr. Meyers' conclusions are different from

7

Mr. Sims' conclusions. Boston Scientific argues that the Sims report was prepared about different products, different patents, involved different considerations and thus is irrelevant. However, those distinctions may be explored on direct and cross-examination and will affect the weight of the various elements of testimony.

**5. Boston Scientific's motion to limit expert testimony to opinions and bases expressed in 26(a) reports: GRANTED**. The experts testifying for either party at trial are limited to testimony about the opinions, and the supporting bases, expressed in the experts' Rule 26(a) reports.

**6. Boston Scientific's motion to preclude reference to injunctive relief and to "monopoly": GRANTED** as to injunctive relief. **DENIED** as to "monopoly," without prejudice to objection at time of trial.

**7. Boston Scientific's motion to exclude rebuttal opinion and testimony of Dr. Kevin Murphy: DENIED**. Boston Scientific objects that Dr. Murphy's testimony is duplicative and cumulative. As Cordis correctly points out, the time constraints imposed on counsel will require them to avoid duplication and cumulative testimony, and such objections, if appropriate, may be made at trial.

**8. Boston Scientific's motion to instruct jury that the effective date of Boston Scientific's patents is October 27, 1993: DENIED.** Boston Scientific asks the Court to revisit its prior ruling, made during the interference proceedings, that the Kastenhofer patents are not entitled to a priority date of October 27, 1993, based on the European patent application filed by Schneider (Europe). *See* November 22, 2005 Order Granting Cordis's Motion to Declare the Senior Party and Granting Cordis's Motion for a Declaration of Corresponding Claims (docket #359), at 2:17 - 4:3. Boston Scientific argues the Court should exercise its discretion to depart from the law of the case because an intervening change in the law has occurred and because not doing so would work a manifest injustice. The Court agrees with Cordis that the prior ruling stands because no exception to the law of the case is present here. The Federal Circuit's recent decision in *Boston Scientific Scimed, Inc. v. Medtronic*

*Vascular, Inc.*, 2007 WL 2255222 (Fed. Cir. Aug. 8, 2007), did not broaden the nexus that must exist between an inventor and a foreign patent applicant in order for the inventor to benefit from a prior foreign filing date. Rather, the Federal Circuit merely clarified that the relationship laid out in 35 U.S.C. § 119 – requiring a foreign applicant to be a "legal representative[] or assign[]" of the inventor, 35 U.S.C. § 119(a) – must be established "*at the time the foreign application was filed,*" *Boston Scientific Scimed*, 2007 WL 2255222 * 3 (emphasis in original).

**9. Boston Scientific's motion to exclude evidence of prior art not disclosed in Final Invalidity Contentions: GRANTED.** This ruling applies to both parties.

**10. Boston Scientific's motion to exclude evidence of later work on tie layers by Byam, Cashman and Kasterhofer: DENIED**. The Court finds that this evidence may be relevant to various issues still in the case.

**11. Boston Scientific's motion to preclude use of evidence at trial which was not produced during discovery: GRANTED** re: documents related to the Conor CoStar catheter; **DENIED** re: documents related to the Predator catheter. Cordis never produced documentation concerning the Conor CoStar catheter, after repeated requests. However, Cordis offered to make the Predator catheter available for inspection but Boston Scientific did not take that opportunity.

    **8.**    **Other Legal Questions:**

    **1. Burden of proof - anticipation and obviousness**: The parties dispute whether the burden of proof for deciding anticipation and obviousness is by a mere preponderance of the evidence, rather than clear and convincing evidence, with respect to prior art which was not before the Examiner during prosecution of the asserted patents. The question is raised by the recent decision in *KSR Int'l. Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007). This Court believes that until further clarification from the Supreme Court, the clear and convincing standard remains the burden of proof.

    In *KSR*, the Supreme Court hinted at the possibility that the burden of proof should be reduced

1 to a lower standard when a claim of invalidity is based on prior art that was not considered during the
2 prosecution of a patent. Although the Supreme Court explicitly stated that it declined to "reach the
3 question whether the failure to disclose Asano during the prosecution of Engelgau voids the presumption
4 of validity given to issued patents," the Supreme Court opined in dicta that it was "appropriate to note
5 that the rationale underlying the presumption – that the PTO, in its expertise, has approved the claim
6 – seems much diminished here." *KSR*, 127 S. Ct. at 1745. Thus, despite the Supreme Court's failure
7 to reach the question presented here, it indicated a preference, in dicta, for giving less weight to the
8 presumption of validity in such situations. Although this Court does "not treat considered dicta from
9 the Supreme Court lightly," and instead "accord[s] it appropriate deference," *United States v. Montero-*
10 *Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000), the Court does not find occasion to depart from
11 prior holdings of the Federal Circuit based on language indicating that the rationale underlying the
12 presumption of validity is diminished, *see Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1549 (Fed.
13 Cir. 1983) ("[T]he introduction of art or other evidence not considered by the PTO does not change the
14 burden and does not change the requirement that that evidence establish presumption-defeating facts
15 clearly and convincingly.").

16

17 **2. Who has the burden of proof for the issue of "full compensation," and is it an**
18 **issue for the Court or the jury:** The Court recently ruled that Cordis bears the burden of proving, as
19 an affirmative defense, that Boston Scientific has already been fully compensated. *See* Aug. 21, 2007
20 Order re: Cordis's Motions for Summary Judgment (docket #654), at 16:1-5. Cordis asks the Court to
21 revisit that decision now because precedent demands that the burden should be placed on Boston
22 Scientific. The Court agrees with Cordis. The Federal Circuit has held, albeit in a different context, that
23 the party seeking recovery bears the burden of proving that it has not been fully compensated. *Conoco*
24 *Inc. v. Dep't of Energy*, 99 F.3d 387, 397 (Fed. Cir. 1996) (explaining that the plaintiff bears the burden
25 of proving that there has not been a double recovery because the plaintiff (1) is the party seeking
26 recovery, (2) presumably has better access to information regarding prior settlements, and (3) might
27 have avoided the issue by better drafting).; *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*,
28 377 U.S. 476, 509, 523 (1964) (indicating that the party seeking recovery bears the burden of disproving

full compensation in the patent context); *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 574 (9th Cir. 1973) (employee in civil rights suit bears the burden of proving that "an out-of-court settlement for a grievance" was "not intended to be a complete settlement of his claim for money damages").

The parties both agree that the issue of full compensation must be decided by the Court, not the jury, and decided after the jury renders its verdict.

**IT IS SO ORDERED.**

Dated: September 20, 2007

SUSAN ILLSTON
United States District Judge