IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSTON SCIENTIFIC CORP., *et al.*, | No. C 02-0790 SI |
| Plaintiffs, | **ORDER RE: COUNTERCLAIM-PLAINTIFF'S MOTION FOR EQUITABLE RELIEF** |
| v. | |
| JOHNSON & JOHNSON and CORDIS CORP., | |
| Defendants. / | |
| CORDIS CORP., | |
| Counterclaim-Plaintiff, | |
| v. | |
| BOSTON SCIENTIFIC CORP., *et al.*, | |
| Defendants. / | |

On October 3, 2008, the Court heard oral argument on counterclaim-plaintiff Cordis Corp.'s motion for equitable relief. Having considered the papers submitted, and for good cause shown, the Court DENIES Cordis' motion without prejudice. The Court will consider evidence on a reasonable rate for an ongoing royalty at an evidentiary hearing on **January 22, 2008 at 9:00**.

**BACKGROUND**

In its order on post-trial motions, this Court summarized the facts of this case as follows:

> In 2002, plaintiffs Boston Scientific Corporation, Boston Scientific Scimed, Inc., Scimed Life Systems, Inc., and Schneider (Europe) GmbH (collectively "BSC") brought suit against defendants Johnson & Johnson and Cordis Corporation (collectively "Cordis") for infringement of six patents. The first four patents were invented at

Schneider (Europe) by Gerhard Kastenhofer and are directed to a bilayered catheter tube design for balloon angioplasty catheters.

Catheters generally consist of a hollow tube with a wire ("guide wire") running through the hollow interior (or "lumen") of the tube. The insertion (or "distal") end of the catheter shaft is encapsulated in a tubular balloon. The guide wire fits closely inside the tube, so that the inner surface of the tube contacts and slides over the guide wire. These tubular catheters are inserted into and through arteries to reach constricted and clogged sites. The guide wire is inserted first, and acts to guide the catheter tube into position within the artery.

Catheters having this basic structure were already in existence prior to the filing of the Kastenhofer patents. However, no tube material that was stiff enough to be pushed though the twists of arteries was also slippery enough to slide easily over the guide wire without often getting stuck. Gerhard Kastenhofer, a scientist at Schneider (Europe), invented an improved bilayered catheter design that addressed this problem, which was claimed in the Kastenhofer patents.

The Kastenhofer catheter design involves a multilayered tube having an outer layer of stiff material to keep the tube firm enough to be pushed up an artery, and an inner layer of soft slippery material to allow the tube to slide easily over the guide wire. The Kastenhofer patents disclose that the bilayered tube is made by a process called coextrusion, in which the molten materials of the inner and outer layers are pushed out together through tubular dies so that the materials merge to form the required tubular structure. In Kastenhofer's preferred embodiment, the outside layer is made of a polyamide (nylon), and the inner layer is made of high density polyethylene ("HDPE").

Also at issue in this case is BSC's infringement of Cordis' patents. Defendants counterclaimed that plaintiffs are infringing three Cordis-owned U.S. patents invented by Carlos Fontirroche and Jason Querns (collectively, the "Fontirroche patents"). As with the Kastenhofer patents, the Fontirroche patents are directed to a bilayered catheter tube design for balloon angioplasty catheters.

A jury trial was held from October 9, 2007 to October 31, 2007. BSC's argument that Cordis infringed the claims of the Kastenhofer patents, as well as Cordis' argument that BSC infringed Claim 7 of the Fontirroche patent, were submitted to the jury. Also submitted to the jury were preliminary factual questions relating to the obviousness of the Kastenhofer patents. The jury found for Cordis on its invalidity contention that BSC did not reduce the invention of the Kastenhofer patents to practice in January 1992 and that Christine Byam was not correctly named as a joint inventor of the Kastenhofer patents. The jury also found that BSC infringed Claim 7 of the Fontirroche patent under the doctrine of equivalents. The question of damages for BSC's infringement of the Fontirroche patent was not submitted to the jury because Cordis inexplicably chose not to call its damages expert and therefore failed to put on evidence regarding a reasonable royalty rate.

*See* Order Re: Various Post-Trial Motions, at 1-3 ("Order"). [Docket No. 844]

After the trial, Cordis sought a judgment granting Cordis retrospective damages at a 2% royalty rate, plus interest, and prospective damages at a 4% royalty rate. BSC opposed the motion for a 2% royalty rate, arguing that Cordis made a tactical decision not to produce any damage evidence to the jury and that an award of damages by the Court would therefore violate BSC's Seventh Amendment right to a jury trial. On February 19, 2008, this Court held, *inter alia*, that it could not award damages to Cordis without violating BSC's Seventh Amendment right. *See* Order, at 21. The Court also found,

2

however, that awarding Cordis equitable relief in the form of an injunction or an ongoing royalty would not infringe BSC's right to a jury trial. *See id.* The Court allowed the parties 60 days to negotiate a license or for BSC to cease its infringement of the Fontirroche patent. The parties were unable to negotiate a license and BSC continues to infringe the Fontirroche patent. Now before the Court is the question of what form equitable relief should take.

**LEGAL STANDARD**

In *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006), the Supreme Court disapproved of the Federal Circuit's "general rule" in patent disputes that "a permanent injunction will issue once infringement and validity have been adjudged." The Court held that district courts must exercise their equitable discretion in patent cases according to the "traditional principles of equity." *See id.* at 391, 394 (A plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction). Some patent holders who prefer to license their patents rather that seek a permanent injunction "may be able to satisfy the traditional four-factor test". *Id.* at 391. If the parties cannot negotiate a license for future use of a patented invention, the district court may "step in to assess a reasonable royalty in light of the ongoing infringement." *Paice, LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007).

**DISCUSSION**

**1.    The Court will not violate BSC's Seventh Amendment right to a jury trial by imposing an ongoing royalty**

Cordis argues that a permanent injunction against further infringement by BSC is appropriate only as "a last resort" and seeks an ongoing royalty for the value of the catheter portion of BSC's

3

infringing products.[1]  *See* Cordis' Mot. in Supp. of Equitable Relief, at 10.  BSC responds that a judicially imposed ongoing royalty in this case will violate BSC's Seventh Amendment right to a jury trial.

An anomaly in this case is that the jury made no determination about a reasonable rate for retrospective or future damages because Cordis made a tactical decision not to present evidence of damages to the jury.  BSC is correct that the Federal Circuit has never allowed a judicially-fixed royalty when the patentee submitted no evidence regarding a reasonable royalty rate for infringement to the jury.  *Paice, LLC v. Toyota Motor Corp.* 504 F.3d 1293 (Fed. Cir. 2007), suggests, however, that the Court is not barred from doing so.

In *Paice*, the district court found after a jury trial that a permanent injunction was not warranted and instead awarded an ongoing royalty of $25 per infringing product.  The Federal Circuit held that the district court erred by imposing an ongoing royalty "sua sponte upon the parties," rather than allowing them to attempt to negotiate a license, and by failing to provide reasoning to support the rate of $25 per product.  *See id.* at 1315.  The Federal Circuit remanded for the trial court to reevaluate the ongoing royalty rate and held that on remand, "the court may take additional evidence if necessary to account for any additional economic factors arising out of the imposition of an ongoing royalty."  *Id.*

BSC distinguishes *Paice* by arguing that the Seventh Amendment issue was not briefed comprehensively in that case.  The Court agrees that the holding in *Paice* was narrow.  The Federal Circuit rejected Paice's argument that an ongoing royalty constitutes "damages" merely because it is monetary relief, but did not make a broader holding on the constitutional implications of a judicially imposed future royalty.  *See id.* at 1316 (holding that "the fact that monetary relief is at issue in this case does not, standing alone, warrant a jury trial.").  Nonetheless, *Paice* remanded the case to the trial court for a judicial determination of the ongoing royalty rate and permitted the trial court to take evidence "to account for any additional economic factors arising out of the imposition of an ongoing royalty rate."

---

[1] The parties have not briefed the issue of whether a permanent injunction should issue.  Cordis argued in its opening brief that the Court should consider a permanent injunction only as a last resort.  BSC argued that Cordis had forfeited its right to a permanent injunction by failing to brief the Court on the traditional four-factor test.  *See* BSC Opp. to Cordis' Request, at 1.  In its reply, Cordis argued in a footnote that a permanent injunction is not feasible.  *See* Cordis' Reply in Supp. of Mot. for Equitable Relief, at 2 n.1.

4

*Id.* at 1315. The Federal Circuit's disposition of *Paice* suggests that it would be permissible for this Court to determine, after an evidentiary hearing, a reasonable rate for an ongoing royalty.

The fact that the jury in this case did not determine a reasonable rate for past infringement is not dispositive because past and future royalty rates are based on different facts. "[P]re-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other facts." *Id.* at 1317 (Rader, J., concurring). In *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1356 (Fed. Cir. 2008), the Federal Circuit found, consistent with *Paice*, that the district court erred by beginning its analysis with the royalty rate set by the jury for pre-verdict infringement. In light of the "fundamental difference" between "a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement," the court should have taken into account the change in the parties' bargaining power after liability has been determined. *Id.* at 1361-62.

The Court concludes that because the jury determined liability, the Court may consider evidence and set an ongoing royalty rate without violating the Seventh Amendment, even though the Court's determination cannot be informed by a jury decision on what a reasonable rate for pre-judgment infringement should be.

**2.     The patent statute authorizes the judicial award of an ongoing royalty**

BSC argues that the patent statute does not authorize the judicial award of an ongoing royalty. The patent statute provides, "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. *Paice* interpreted the patent statute to authorize the award of an ongoing royalty as a form of equitable relief in lieu of an injunction. *See* 504 F.3d at 1314. This Court has already determined that equitable relief is warranted. *See* Order, at 21. Accordingly, the Court finds that it is authorized by the patent statute to award Cordis an ongoing royalty for BSC's infringing products.

//

**3.    The Court will determine an ongoing royalty rate based on the date of the jury verdict as the date of the hypothetical negotiation**

Cordis proposes 6% of the value of the catheter portion of BSC's infringing products as a rate for the post-verdict royalty. BSC responds that a rate of no more than 0.5% is reasonable.

"A reasonable royalty is the amount that a person, desiring to manufacture, use, or sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make, use, or sell the patented article, in the market, at a reasonable profit." *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984) (citation omitted). "The royalty may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995). "The hypothetical negotiation requires the court to envision the terms of a licensing agreement reached as the result of a supposed meeting between the patentee and the infringer at the time infringement began." *Id.* Reasonable royalties are most commonly determined by considering the fifteen non-exclusive factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970). *See also Unisplay, S.A. v. American Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995) (endorsing use of the *Georgia-Pacific* factors).

In this case, the parties offer competing expert opinions on what the rate of the ongoing royalty should be. The main point of contention is whether the date of the hypothetical negotiation should be 1998 (the date of the first infringement) or 2007 (the date of the jury's verdict). BSC's argument that the hypothetical negotiation should be placed at the date of the first infringement is well supported by Federal Circuit precedent regarding reasonable royalty rates for past infringement. *See, e.g.*, *Rite-Hite*, 56 F.3d at 1554. The Court agrees with Cordis, however, that post-verdict royalties require a different approach.

*Paice* and *Amado* offer guidance for the factors courts should take into account when determining a royalty rate for post-judgment infringement. When *Paice* remanded for an evidentiary hearing to determine the ongoing royalty rate, the Federal Circuit indicated that the trial court should consider "additional economic factors arising out of the imposition of an ongoing royalty." 504 F.3d at 1315. *Amado* noted that when an injunction is warranted but the court stays the injunction pending

6

appeal, royalty rates for post-judgment acts of infringement during the stay should take into account "the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability". 517 F.3d at 1362. While the hypothetical negotiation for pre-judgment royalties imagines a meeting between the patentee and infringer when the infringement began, it is consistent with *Amado* that the hypothetical negotiation for post-judgment royalties should occur on the date of the verdict, when the determination of liability altered the parties' bargaining positions. Accordingly, the parties are directed to assume that parties negotiated a license on October 31, 2007, the date the jury returned a special verdict in favor of Cordis.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES without prejudice Cordis' motion for equitable relief. The Court will consider evidence on a reasonable rate for an ongoing royalty at an evidentiary hearing on **January 22, 2008 at 3:30 p.m.**.

**IT IS SO ORDERED.**

Dated: 11/25/08

SUSAN ILLSTON
United States District Judge