REVISED
9:04 am, Jul 06, 2009

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC., SCIMED LIFE SYSTEMS, INC., and SCHNEIDER (EUROPE) GmbH,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHNSON & JOHNSON and CORDIS CORPORATION,<br><br>Defendants. | No. C 02-790 SI (filed Feb. 14, 2002)<br><br>[PROPOSED] **FINAL JUDGMENT** |
| CORDIS CORPORATION,<br><br>Counterclaim-Plaintiff,<br><br>vs.<br><br>BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC., SCIMED LIFE SYSTEMS, INC., and SCHNEIDER (EUROPE) GmbH,<br><br>Counterclaim-Defendants. | |

# FINAL JUDGMENT

This action was tried by a jury with Judge Illston presiding, and the jury has rendered a verdict. The Court has denied post-trial motions to set aside the verdict. *See* Docket No. 844 (Feb. 19, 2008). Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Judgment is entered for Johnson & Johnson and Cordis Corporation (hereafter "Defendants") and against Boston Scientific Corporation, Boston Scientific Scimed, Inc., Scimed Life Systems, Inc., and Schneider (Europe) GmbH (hereafter "Plaintiffs").

2. Plaintiffs shall recover nothing on their claims of patent infringement against Defendants.

3. Defendants do not infringe claims 1–2, 7, 13–14, 16–17, 20–22, 25, and 30–32 of U.S. Patent No. 5,501,759 to Forman. *See* Docket No. 654, at 18:9–22:13 (Aug. 21, 2007) (summary judgment of non-infringement of the '759 patent).

4. Plaintiffs' claims against defendants for infringement of U.S. Patent Nos. 5,674,208 to Berg et al. and 5,267,959 to Forman are dismissed with prejudice. *See* Docket No. 112 (Nov. 4, 2003) (voluntary dismissal with prejudice of the '208 patent); Docket No. 528 (June 18, 2007) (voluntary dismissal with prejudice of the '959 patent).

5. Cordis Corporation's claims against Plaintiffs for infringement of U.S. Patent Nos. 5,538,510 and 5,824,173 to Fontirroche et al. are dismissed with prejudice.

6. The claims listed below are invalid under 35 U.S.C. § 102(f) & (g). *See* Tr. 1992:23–1993:1, 2003:20–:23, 2005:4–:9 (jury instructions); Docket No. 794, ¶¶ 2–3 (Oct. 31, 2007) (jury verdict).

- Claim 11 of U.S. Patent No. 5,843,032 to Kastenhofer et al.
- Claim 5 of U.S. Patent No. 5,961,765 to Kastenhofer et al.
- Claim 4 of U.S. Patent No. 6,027,477 to Kastenhofer et al.
- Claim 6 of U.S. Patent No. 6,471,673 to Kastenhofer et al.

7. There is no interference between claim 1 of U.S. Patent No. 5,824,173 to Fontirroche et al. and claim 1 of U.S. Patent No. 5,961,765 to Kastenhofer et al. *See* Docket No. 299 (Feb. 24, 2005). There is no interference between claim 7 of U.S. Patent No. 5,820,594 to Fontirroche et al.

and claims 3, 9, 11, 12, and 14 of U.S. Patent No. 5,843,032 to Kastenhofer et al., claims 4 and 10 of U.S. Patent No. 6,027,477 to Kastenhofer et al., and claims 1–7 of U.S. Patent No. 6,471,673 to Kastenhofer et al. *See* Docket No. 299 (Feb. 24, 2005); Docket No. 359 (Nov. 22, 2005); and Docket No. 432 (Sept. 19, 2006), *amended by* Docket No. 466 (Dec. 5, 2006).

8. Judgment is entered in favor of Cordis Corporation on its counterclaim of infringement by Plaintiffs of U.S. Patent No. 5,820,594 to Fontirroche et al., as set forth below.

9. The following products infringe claim 7 of U.S. Patent No. 5,820,594 to Fontirroche et al. under 35 U.S.C. § 271(a):

- Taxus Express$^2$ RX drug-eluting stent
- Taxus Express$^2$ OTW drug-eluting stent
- Taxus Liberte RX drug-eluting stent
- Express$^2$ RX bare metal stent
- Express$^2$ OTW bare metal stent
- Liberte OTW bare metal stent
- Liberte RX bare metal stent
- Maverick OTW balloon catheter
- Maverick RX balloon catheter
- Maverick$^2$ RX balloon catheter
- Maverick XL balloon catheter
- Quantum Maverick OTW balloon catheter
- Quantum Maverick RX balloon catheter
- UltraSoft SV balloon catheter

*See* Tr. 1994:21–1995:1 (jury instructions); Docket No. 794, ¶ 9 (jury verdict).

These products, and products not colorably different, will be referred to as the "Infringing BSC Products."

10. Defendants shall receive no damages for any infringement of the Fontirroche '594 patent by the Plaintiffs prior to October 31, 2007, the date of the jury verdict. *See* Tr. 1313:23–1314:12; Order re: Various Post-Trial Motions at 17:23–22:15 (Feb. 19, 2008) [Docket No. 844].

-3-
FINAL JUDGMENT — No. C 02-790 SI

11. Until the earlier of (i) the date Plaintiffs obtain a license to the Fontirroche '594 patent or (ii) the expiration of the Fontirroche '594 patent on January 31, 2014,[1] Plaintiffs jointly and severally shall pay Cordis Corporation a royalty of 5.1% of the value of the catheter portion of the Infringing BSC Products that are made, used, imported, sold, or offered for sale in the United States after October 31, 2007. *See* Order Determining Reasonable Rate for Ongoing Royalty at 11:3–:5 (Apr. 9, 2009) [Docket No. 882].

12. If an Infringing BSC Product is a stent delivery system sold <u>inside</u> the United States, then the value of the catheter portion of the Infringing BSC Product shall be equal to the average selling price in the United States for the balloon catheter when sold alone during the quarter in which the Infringing BSC Product was sold. If an Infringing BSC Product is a stent delivery system sold <u>outside</u> the United States, then the value of the catheter portion of the Infringing BSC Product shall be equal to the average selling price for the balloon catheter when sold alone outside the United States during the quarter in which the Infringing BSC Product was sold. For example, if a stent delivery system sold outside the United States comprises a stent mounted on an infringing Quantum Maverick RX balloon catheter made inside the United States, then the value of the catheter portion of the stent delivery system sold outside the United States would be the average selling price for a Quantum Maverick RX balloon catheter sold outside the United States during the quarter in which the Infringing BSC Product was sold.

13. If there is not an average selling price for an infringing balloon catheter when sold alone, then the parties shall meet and confer to determine the appropriate value to use for purposes of calculating the royalty payment. If the parties cannot reach agreement, then the Court shall determine the appropriate value upon a motion made by either party.

14. According to Plaintiffs' calculations, the amount owed by Plaintiffs for the period from November 1, 2007, through March 31, 2009, inclusive, is $26,102,100, and judgment is entered

---

[1] As the result of a terminal disclaimer, the Fontirroche '594 patent will expire on January 31, 2014 (20 years from the filing date of U.S. Patent No. 5,538,510 to Fontirroche et al.). *See* 35 U.S.C. § 154(c)(1); *Bayer AG v. Carlsbad Tech., Inc.*, 298 F.3d 1377, 1378 (Fed. Cir. 2002) ("The URAA took effect on June 8, 1995, changing the patent term from seventeen years from the date of issuance to twenty years from the date of filing of the patent application.").

in favor of Cordis Corporation and against Plaintiffs, jointly and severally, for this amount. This amount includes royalties accrued and interest as of March 31, 2009. The interest amount is calculated using the E2 rate,[2] as reported by the Federal Reserve <http://www.federalreserve.gov/releases/E2/> for the calendar quarters in question, compounded quarterly.

15. Notwithstanding paragraphs 11, 14, and 20, Plaintiffs shall not be required to pay the money judgment in paragraph 14, any costs taxed to Plaintiffs, or make any royalty payments until thirty days after (a) the expiration of the period for filing a notice of appeal, if no notice of appeal has been filed, or (b) the issuance of a mandate by the Court of Appeals. This date will be referred to as the "Initial Payment Date." Starting on September 30, 2009, and continuing until the Initial Payment Date, Plaintiffs shall submit (but not pay) a royalty report to Cordis Corporation, on the last business day of each quarter, which reflects the amount of royalties that accrued the previous quarter. For example, on September 30, 2009, Plaintiffs shall report to Cordis Corporation the amount of royalties that accrued between April 1, 2009 and June 30, 2009. Each report shall be accompanied by an accounting of the infringing products. On the Initial Payment Date, Plaintiffs jointly and severally shall pay (to the extent they remain so obligated) the money judgment in paragraph 14 plus interest calculated using the E2 rate as reported by the Federal Reserve for the calendar quarters in question, compounded quarterly from March 31, 2009. On the Initial Payment Date, Plaintiffs jointly and severally shall also pay (to the extent they remain so obligated) the royalties that accrued after March 31, 2009, plus interest on such royalties accrued calculated using the E2 rate as reported by the Federal Reserve for the calendar quarters in question, compounded quarterly from the date of the quarterly royalty report involving the royalty amounts in question.

---

[2] The specific E2 rate to be used throughout this judgment shall be the weighted-average effective loan rate for commercial and industrial loans made by domestic banks for loans exceeding $10 million. For example, for the fourth quarter of 2008, the specific E2 rate to be used is 4.03%, which can be found on page 2, line 34, first column, of the E2 release for the period November 3–7, 2008, <http://www.federalreserve.gov/releases/E2/200812/e2.pdf>.

1      16.     After the Initial Payment Date, royalty payments for a given calendar quarter shall be made on the last business day of the next succeeding calendar quarter. Each payment shall be accompanied by an accounting of the infringing products.

       17.     After the Initial Payment Date, payments not made on the due date shall accrue interest after the due date at the rate of 10%, compounded monthly.

       18.     In the event that Cordis Corporation believes that any royalty report or royalty payment is incorrect, the following procedure shall apply:

   (a) *Meet and confer requirement*: Cordis Corporation shall promptly provide Plaintiffs with a statement of the reasons for Cordis Corporation's belief, after which the parties shall meet and confer in good faith in an attempt to resolve all issues.

   (b) *Procedure for commencing an audit*:

   ~~[*Cordis's proposal:*] If the parties are unable to resolve all issues after meeting and conferring in good faith, then Cordis Corporation may proceed with an audit of Plaintiffs' royalty report(s) and/or royalty payment(s).~~

   [*BSC's proposal:*] If, after 30 days from the time that Cordis Corporation provides its statement of reasons, Cordis Corporation continues to believe that the royalty report or royalty payment is incorrect, Cordis Corporation may apply to the Court for permission to have an audit sufficient to show the accuracy of the accounting of the infringing products on which royalties have been reported or paid. Plaintiffs shall have fifteen days to respond to the application submitted by Cordis Corporation. If the Court finds that Cordis Corporation has made a showing of good cause, then Cordis Corporation may proceed with the audit.

   (c) *Criteria for the auditor*: The audit shall be performed by a firm of independent accountants (the "Auditor"), subject to the following limitations: The Auditor shall be a nationally recognized firm selected by Cordis Corporation, and shall have no existing or prior business relationship with any of the parties to this case within the previous five years.

   (d) *Protective order*: Prior to the audit, the Auditor must agree to be bound by the Stipulated Protective Order entered in this case [Docket No. 49].

(e) *Procedure for the audit*: The audit shall be conducted during normal business hours.

(f) *Data for the audit*:

[*Cordis's proposal:*] The audit shall be limited to data reasonably accessible to Plaintiffs.

~~[*BSC's proposal:*] The audit shall be limited to data reasonably accessible through Plaintiffs' global SAP accounting system~~.

(g) *Results of the audit*: The Auditor shall only disclose to Cordis Corporation its conclusions regarding the accuracy or inaccuracy of Plaintiffs' accounting (as distinct from other information it inspects). If Plaintiffs' accounting was inaccurate, the Auditor shall summarize its conclusions in a written report which specifies the corrections that should be made to the royalty reports or payments. An exact copy of any report prepared by the Auditor shall be supplied to Cordis Corporation and to Plaintiffs. In the absence of clerical or manifest error, the findings of the audit shall be conclusive and binding on both parties. If the audit shows that the amount reported or paid in a given quarter was 10 percent or more below the amount that should have been reported or paid, then the cost of the audit shall be borne by Plaintiffs. Otherwise, the cost of the audit shall be borne by Cordis Corporation.

(h) *Time limit for disputes*: All royalty reports or royalty payments not disputed as to correctness by Cordis Corporation within one year of receipt thereof, or one year after the Initial Payment Date, whichever is later, shall thereafter conclusively be deemed correct for all purposes.

19. The Court specifically retains jurisdiction to enforce, modify, or terminate this ongoing royalty as the equities may require, and to adopt procedures for resolution of any dispute whether a product not specifically covered by this Order "colorably infringes" claim 7 of the Fontirroche '594 patent.

20. The following procedures shall govern the taxation of costs, notwithstanding any procedures to the contrary in Docket No. 832 (Jan. 15, 2008) or Civil L.R. 54.

- Defendants are the prevailing party.

-7-
FINAL JUDGMENT — No. C 02-790 SI

- Defendants have already filed a bill of costs for pre-verdict costs. *See* Docket Nos. 819–20 (Dec. 14, 2007).
- Defendants may file and serve a supplemental bill of costs for post-verdict costs in accordance with Civil L.R. 54-1(a) no later than 14 days after entry of this judgment.
- Plaintiffs must serve and file any objections to Defendants' bill(s) of costs under Civil L.R. 54-2 no later than 28 days after entry of this judgment.

21. This is a Final Judgment and is appealable.

JUDGMENT IS SO ENTERED.

Dated: 7/2/09

SUSAN ILLSTON
United States District Judge